NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-5103-14T4

SATEC, INC. and SATEC, LLC,
 APPROVED FOR PUBLICATION
 Plaintiffs-Appellants,
 June 7, 2017
v.
 APPELLATE DIVISION
THE HANOVER INSURANCE GROUP,
INC., CITIZENS INSURANCE COMPANY
OF AMERICA, GRINSPEC INSURANCE
AGENCY, INC. D/B/A CENTRIC
INSURANCE AGENCY AND LEE
NESTEL,

 Defendants-Respondents,

and

THE HANOVER INSURANCE GROUP,
INC., CITIZENS INSURANCE COMPANY
OF AMERICA,

 Defendants/Third-Party
 Plaintiffs-Respondents,

v.

PATRICK SPINA,

 Third-Party Defendant.
_______________________________________

 Argued December 7, 2016 – Decided June 7, 2017

 Before Judges Alvarez, Accurso and Manahan.1

1
 Hon. Carol E. Higbee participated in the panel before whom this
case was argued. The opinion was not approved for filing prior
to Judge Higbee's death on January 3, 2017, and the matter
 (continued)
 On appeal from Superior Court of New Jersey,
 Law Division, Union County, Docket No. L-
 0799-12.

 David Jaroslawicz (Jaroslawicz & Jaros) of
 the New York bar, admitted pro hac vice,
 argued the cause for appellant (Jaroslawicz
 & Jaros, PCCL, attorneys; Elizabeth Eilender,
 on the briefs).

 Jason S. Feinstein argued the cause for
 respondents Grinspec Insurance Agency, Inc.
 d/b/a Centric Insurance Agency and Lee
 Nestel (Eckert Seamans Cherin & Mellot, LLC,
 attorneys; Mr. Feinstein, of counsel and on
 the brief; Jill R. Cohen, on the brief).

 Craig M. Terkowitz argued the cause for
 respondents The Hanover Insurance Group,
 Inc. and Citizens Insurance Company of
 America (Law Offices of Terkowitz &
 Hermesmann, attorneys; Mr. Terkowitz, on the
 brief).

 The opinion of the court was delivered by

MANAHAN, J.A.D.

 Satec, Inc. and Satec, LLC (collectively, Satec), appeal

from the July 1, 2015 order granting summary judgment in favor

of defendants Grinspec Insurance Agency, Inc. d/b/a Centric

Insurance Agency and Lee Nestel (collectively, Centric) and The

Hanover Insurance Group, Inc. and Citizens Insurance Company of

(continued)
proceeded as a two-judge panel pursuant to Rule 2:13-2(b).
Prior to making its determination, the panel elected to call a
third judge to participate in the decision, in accordance with
Rule 2:13-2(b). The parties have consented to the addition of
Hon. Carmen H. Alvarez to the panel, and have waived reargument.

 2 A-5103-14T4
America (collectively, Hanover). The negligence and

professional malpractice action arose from damage sustained to

Satec's real and personal property as a result of Hurricane

Irene. After our review of the record and applicable law, we

affirm.

 We discern the following facts from the motion record,

viewed in a light most favorable to plaintiffs as the non-moving

parties. Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520,

540 (1995). Satec is a distributor of electricity measurement

meters. In 2003, Satec acquired a warehouse and business

offices in Union County, New Jersey (the property). In 2007,

Satec sought the counsel and advice of Centric, an independent

insurance brokerage agency, relative to its desire to insure the

property. Satec’s office manager, Lourdes Gordillo, met with

Nestel, President of Centric. As part of Nestel’s presentation

to Satec, he provided Gordillo with a letter dated April 20,

2007, which contained an insurance proposal from Hanover, the

underwriter of the insurance policy. In the letter, Nestel

noted that Satec should review the proposal regarding coverage

limits and exclusions:

 Please review the entire proposal
 carefully with particular attention to the
 property limits on the proposal and advise
 me if you would like to increase coverage.
 Please also review the [r]ecommendations
 section following this letter. The

 3 A-5103-14T4
 [r]ecommendations section lists insurance
 coverage NOT included in this proposal.
 Please advise if you would like us to pursue
 a quotation for insurance coverage not
 included in this proposal.

 The "recommendations section" was enclosed in a separate

document titled, in bold lettering, "Recommendations & Important

Insurance Information[.]" That document stated in bold

lettering, "Note: The insurance coverage outlined below is not

included in your present insurance program. Please contact

[Centric] to receive additional information regarding these

coverage items and to obtain pricing information[.]" (emphasis

in original). Under the portion of the letter labeled "list of

insurance coverage not included in your present insurance

program," was "Flood & Earthquake Coverage[.]" Those coverages

were described as "coverage for flood (including surface water

accumulation) and earthquake." The letter specifically advised

that "these two perils are excluded under a standard property

policy."2

 Satec ultimately purchased several policies from Centric,

including the Business Owners Policy (BOP), which was

underwritten by Citizens, a subsidiary of Hanover. The BOP was

issued for the period from May 1, 2007 to May 1, 2008, and

included in a separate section the following "Exclusions":

2
 Hanover did not write flood insurance.

 4 A-5103-14T4
 1. We will not pay for loss or damage
 caused directly or indirectly by any of
 the following. Such loss or damage is
 excluded regardless of any other cause
 or event that contributes concurrently
 or in any sequence to the loss. These
 exclusions apply whether or not the
 loss event results in widespread damage
 or affects a substantial area.

 . . . .

 (g) Water

 (1) Flood, surface water, . . .
 overflow of any body of
 water, or spray from any of
 these, all whether or not
 driven by wind (including
 storm surge);

 . . . .

 (4) Water under the ground surface
 pressing on, or flowing or seeping
 through:

 (a) Foundations, walls, floors or
 paved surfaces;

 (b) Basements, whether paved or
 not; or

 (c) Doors, windows or other
 openings.

 (5) Waterborne material carried or
 otherwise moved by any of the
 water referred to in paragraph 1.,
 3. or 4., or material carried or
 otherwise moved by mudslide or
 mudflow.

 On May 3, 2007, Centric sent a letter to Satec regarding

its newly implemented BOP. In the cover letter, Centric stated,

 5 A-5103-14T4
in bold and underlined font, "[p]lease review the attached

Recommendations and Important Information flyer for insurance

coverage not included in your present insurance program and

other factors affecting your insurance," which was enclosed with

the letter. The cover letter also noted in the opening

paragraphs, "[a]lthough your policy is a broad contract, there

are limitations, conditions and exclusions that may affect your

recovery in the event of a claim. There are other coverage

restrictions outlined in your policy as well."

 Thereafter, Satec renewed the policy annually through May

1, 2012. Prior to each renewal, Centric sent Satec written

correspondence advising about the upcoming renewal and/or new

policy options. Included in each of the letters was the same

"Recommendations & Important Insurance Information" document.

 On August 28, 2011, the property was flooded due to

Hurricane Irene, which resulted in property damage to the

building in an alleged amount of $2.3 million. Satec filed a

claim seeking coverage from Hanover. Upon receipt of the claim,

Hanover conducted an investigation, wherein it determined that

the flooding and consequential damage was occasioned by an

overflow from the Rahway River, an incident not covered, as

specifically excluded, by the BOP.

 6 A-5103-14T4
 Sometime prior to the loss, Hanover became aware that the

property was located in a flood hazard zone after it conducted a

loss control inspection. Hanover did not disclose this

information to Satec or Centric. As well, when Satec purchased

the property in October 2003, its counsel (a third-party

defendant not participating in this appeal) undertook steps to

determine if the property was in a flood zone prior to the title

closing, which revealed the property was designated a flood

hazard area.3

 Satec filed a complaint on February 28, 2012, and an

amended complaint on March 22, 2012, against Centric, Nestel,

Hanover and Citizens. In its amended complaint, Satec alleged

breach of contract, negligence and professional malpractice,

among other claims. Centric, also on behalf of Nestel, filed

its answer on May 4, 2012. Hanover, also on behalf of Citizens,

filed its answer on September 11, 2013. Following discovery,

defendants moved for summary judgment. The trial court held

oral argument on June 22, 2015. On July 1, 2015, after finding

Satec’s expert provided an inadmissible net opinion, the court

3
 It is disputed whether its counsel informed Satec. Counsel was
named as a defendant in the third-party complaint. The
complaint was later dismissed without prejudice. We have not
considered in our determination whether Satec had knowledge of
the flood area designation.

 7 A-5103-14T4
granted summary judgment in favor of defendants in an eleven-

page written decision. This appeal followed.

 Satec raises the following points on appeal:

 POINT I

 UNDER ESTABLISHED NEW JERSEY LAW, AN
 INSURANCE PRODUCER/BROKER OWES A FIDUCIARY
 DUTY TO ADVISE THE INSURED.

 A. No Expert is Needed to
 Establish that the Defendants
 Breached Their Duty.

 B. Defendants’ Expert Concedes
 that a Broker Has a Duty to
 Advise.

 C. If Plaintiff Had Moved for
 Summary Judgment, the Court Would
 Have Had to Grant its Motion.

 POINT II

 STANLEY HLADIK’S EXPERT OPINION IS VALID.

 A. Experience and Credentials.

 B. Mr. Hladik’s Expert Opinion is
 Based on Experience, Knowledge,
 Standard Forms, and the Facts.

 POINT III

 HANOVER IS VICARIOUSLY LIABLE FOR THE
 NEGLIGENCE OF ITS AGENTS, CENTRIC AND
 NESTEL.

Satec raises these additional points in its reply brief:

 8 A-5103-14T4
 POINT I

 THE ISSUE OF WHETHER A BROKER'S DUTY MAY BE
 ESTABLISHED WITHOUT AN EXPERT WAS RAISED IN
 THE LAW DIVISION.
 POINT II

 MR. HLADIK’S OPINION WAS NOT PERSONAL ONLY
 TO HIMSELF.

 POINT III

 MATERIAL ISSUES OF FACT PRECLUDE SUMMARY
 JUDGMENT.

 POINT IV

 THE COURT SHOULD NOT CONSIDER ARGUMENTS NOT
 REACHED BY THE COURT BELOW.

 We review a grant of summary judgment de novo, observing

the same standard as the trial court. Townsend v. Pierre, 221

N.J. 36, 59 (2015). Summary judgment should be granted only if

the record demonstrates there is "no genuine issue as to any

material fact challenged and that the moving party is entitled

to a judgment or order as a matter of law." R. 4:46-2(c). We

consider "whether the competent evidential materials presented,

when viewed in the light most favorable to the non-moving party,

are sufficient to permit a rational factfinder to resolve the

alleged disputed issue in favor of the non-moving party." Davis

v. Brickman Landscaping, Ltd., 219 N.J. 395, 406 (2014) (quoting

Brill, supra, 142 N.J. at 540). If no genuine issue of material

fact exists, the inquiry then turns to "whether the trial court

 9 A-5103-14T4
correctly interpreted the law." DepoLink Court Reporting &

Litig. Support Servs. v. Rochman, 430 N.J. Super. 325, 333 (App.

Div. 2013) (quoting Massachi v. AHL Servs., Inc., 396 N.J.

Super. 486, 494 (App. Div. 2007), certif. denied, 195 N.J. 419

(2008)).

 In this matter, Satec claims that there were matters in

dispute and sufficient evidence in the discovery record to

demonstrate Centric was professionally negligent in breaching

its duty to procure adequate insurance to meet its needs, namely

flood insurance. We disagree.

 We commence our discussion with a review of the duty of

care insurance brokers and agents owe to insureds. "[A]n

insurance broker owes a duty to his principal to exercise

diligence in obtaining coverage in the area his principal seeks

to be protected." Werrmann v. Aratusa, Ltd., 266 N.J. Super.

471, 474 (App. Div. 1993) (citing Rider v. Lynch, 42 N.J. 465,

476 (1964)). An insurance broker's liability for negligent acts

affecting an insured has been addressed by our Supreme Court:

 Insurance intermediaries in this State must
 act in a fiduciary capacity to the client
 "[b]ecause of the increasing complexity of
 the insurance industry and the specialized
 knowledge required to understand all of its
 intricacies." Walker v. Atl. Chrysler
 Plymouth, Inc., 216 N.J. Super. 255, 260
 (App. Div. 1987) (quoting Sobotor v.
 Prudential Prop. & Cas. Ins. Co., 200 N.J.
 Super. 333, 341 (App. Div. 1984)); see also

 10 A-5103-14T4
 N.J.A.C. 11:17A-4:10 ("An insurance producer
 acts in a fiduciary capacity in the conduct
 of his or her insurance business."). The
 fiduciary relationship gives rise to a duty
 owed by the broker to the client "to
 exercise good faith and reasonable skill in
 advising insureds." Weinisch v. Sawyer, 123
 N.J. 333, 340 (1991).

 [Aden v. Fortsh, 169 N.J. 64, 78-79 (2001)
 (alteration in original).]

Moreover, the Court delineated that the scope of an insurance

broker's obligations to a prospective insured requires insurance

brokers: "(1) to procure the insurance; (2) to secure a policy

that is neither void nor materially deficient; and (3) to

provide the coverage he or she undertook to supply." President

v. Jenkins, 180 N.J. 550, 569 (2004) (citing Rider, supra, 42

N.J. at 476). However, "[t]he duty of a broker or agent . . .

is not unlimited." Carter Lincoln-Mercury, Inc., Leasing Div.

v. EMAR Group, Inc., 135 N.J. 182, 190 (1994).

 I.

 In support of its claim of malpractice, Satec retained

Stanley Hladik as its expert. In furtherance of his retention,

Hladik produced a written report in which he opined that, based

upon deviation from accepted standards, Centric negligently

failed to procure flood insurance on behalf of Satec. In his

deposition testimony, Hladik testified consistently with his

report. Centric sought to bar Hladik's testimony by motion,

 11 A-5103-14T4
which was granted. The judge held that Satec's liability expert

should be excluded as having produced a "net opinion" and that,

in the absence of expert testimony, Satec could not prove as a

matter of law its negligence and malpractice claims.

 The decision to admit or exclude expert testimony is left

to the sound discretion of the trial court. Townsend, supra,

221 N.J. at 52 (citing State v. Berry, 140 N.J. 280, 293

(1995)). It will be reversed only upon a showing that that

discretion was abused. Pomerantz Paper Corp. v. New Cmty.

Corp., 207 N.J. 344, 371 (2011). We review a summary judgment

motion premised on an evidentiary ruling in the same sequence as

the trial court, "with the evidentiary issue resolved first,

followed by the summary judgment determination of the trial

court." Townsend, supra, 221 N.J. at 53 (citing Estate of

Hanges v. Metro. Prop. & Cas. Ins. Co., 202 N.J. 369, 385

(2010)).

 It is well-established that the trial court "must ensure

that [a] proffered expert does not offer a mere net opinion."

Pomerantz, supra, 207 N.J. at 372. Such an opinion is

inadmissible and "insufficient to satisfy a plaintiff's burden

on a motion for summary judgment." Arroyo v. Durling Realty,

LLC, 433 N.J. Super. 238, 244 (App. Div. 2013) (citing Polzo v.

 12 A-5103-14T4
Cty. of Essex, 196 N.J. 569, 583-84 (2008); Smith v. Estate of

Kelly, 343 N.J. Super. 480, 497-98 (App. Div. 2001)).

 "[O]pinion testimony 'must relate to generally accepted . .

. standards, not merely standards personal to the witness.'"

Taylor v. DeLosso, 319 N.J. Super. 174, 180 (App. Div. 1999)

(quoting Fernandez v. Baruch, 52 N.J. 127, 131 (1968)). Stated

in other words, expert testimony must be based upon a consensus

of the involved profession's recognition of the standard defined

by the expert. Ibid. There must be some evidential support

offered by the expert to establish the existence of the

standard. Buckelew v. Grossbard, 87 N.J. 512, 528-29 (1981).

 "[I]f an expert cannot offer objective support for his or

her opinions, but testifies only to a view about a standard that

is personal, it fails because it is a mere net opinion."

Pomerantz, supra, 207 N.J. at 373 (citation and internal

quotation marks omitted). Indeed, we have stressed that because

of "the weight that a jury may accord to expert testimony, a

trial court must ensure that an expert is not permitted to

express speculative opinions or personal views that are

unfounded in the record." Townsend, supra, 221 N.J. at 55.

 In reaching the determination to bar Hladik's report, the

judge held:

 In the present matter, the expert
 opinion of Stanley Hladik testifies as to

 13 A-5103-14T4
 his personal opinion only, and his report
 and testimony shall be barred as net
 opinion. Hladik states that his opinion is
 based upon his [twenty-five] years of
 personal experience in the insurance
 industry, as well as a review of the
 document discovery and deposition testimony
 that has taken place in this litigation.
 Not once in his report, however, does Hladik
 cite to a single objective industry standard
 or authoritative treatise.

 . . . Throughout his report, Hladik
 states what he believes to be the standard
 of care for insurance brokers in New Jersey.
 The statements, however, are conclusory, and
 do not state how Hladik determined what the
 standard of care for an insurance broker in
 New Jersey is. Instead, Hladik merely
 states, "[i]n New Jersey, the standard of
 care for a broker includes making sure that
 the client (insured) understands exactly
 what types of insurance they need and is
 available;" that, "[i]t is the standard of
 care in the industry for brokers to, at the
 very least, make a physical loop of the
 premises either before or after meeting with
 the client;" and that, "[i]t is my opinion
 that [Nestel] had a duty to advise Satec
 that the property was located in a flood
 zone, discuss what flood coverages were
 available and if Satec declined coverage, to
 have Satec decline any flood coverage in
 writing at the time of the initial placement
 of their risk in May 2007." . . . These
 statements were made without any qualifying
 explanations, nor were they supported by any
 written document, supporting case law, or
 other objective custom accepted by the
 insurance producer community. Instead,
 Hladik's report offers opinions that are
 personal to him.

 The crux of Hladik's report and testimony was that Centric

deviated from the accepted standards by failing to make a

 14 A-5103-14T4
physical loop of the premises to determine the potential risks,

to assure that Satec understood exactly what types of insurance

it needed, to explain in writing the gaps in coverage, and to

ascertain the property's flood zone status and advise Satec

accordingly.

 Although Hladik testified that, in his experience, the

referenced standard of care in his report is applicable to

insurance brokers, his personal experience is not a substitute

for an industry standard or practice. "[A]n expert offers an

inadmissible net opinion if he or she cannot offer objective

support for his or her opinions, but testifies only to a view

about a standard that is personal." Davis, supra, 219 N.J. at

410 (internal quotation marks omitted) (quoting Pomerantz,

supra, 207 N.J. at 373).

 During his deposition, Hladik testified relative to the

issue of a standard:

 Q: Is there a treatise or any other
 written authority that you view as
 being one that sets forth the standard
 of care as it relates to flood
 insurance for an insurance producer?

 . . . .

 A: I don't know a specific book that
 someone has come out and written. I
 know what my experiences in the field
 are.

 . . . .

 15 A-5103-14T4
Q: Other than your personal experience . .
 . can you point me to any written
 materials that you're aware of that
 talk about an insurance producer's
 duties or obligations to an insured as
 it relates to the subject of flood
 insurance?

A: I don't think one written just based on
 flood insurance, but there's lots of
 materials that circulate based on
 standard of care of all coverages.

Q: Okay. And what written materials do
 you consider authoritative as it
 relates to standard of care?
A: I would read many insurance trade
 journals. There's magazines and other
 things that come out all the time and
 people who have experience in the field
 write articles, and they opine on the
 subject, and I've gathered all this
 knowledge over [twenty-four-and-a-half
 years] and I form my own opinion as to
 that care.

 . . . .

Q: [] Do you consider publications from
 Big I[, an insurance trade journal,] as
 to the standard of care of an insurance
 producer to be authoritative?

 . . . .

A: [] My experience is what I've dealt
 with, with peers in the business and
 clients in the business and going
 through these transactions thousands of
 times, so that's what develops my
 standard of care. So the written
 material is what it is. It's part of
 that whole process.

 . . . .

 16 A-5103-14T4
Q: [] And other than your personal
 experience, can you point me to any
 other source of authority that says
 that the standard of care requires a
 writing?

A: My source of authority is my
 experience. I do this every day. My
 peers do it every day. It's what we
 do. It's how we do it. And it's what
 the clients deserve for their money.
 That's the standard. That's the best
 practices. That's what you are
 supposed to do.

 . . . .

Q: [] In your business, are there certain
 treatises, publications that are
 considered the bible, you know,
 considered really authoritative?

 . . . .

A: What's really considered in my
 business, and it's funny because I
 asked almost every person in the
 [nineteen] years I've been at Hanson &
 Ryan . . . this question is what you
 learn in school and in getting your
 license is probably ten percent of what
 you need to know. The other [ninety]
 percent is doing it, learning from
 mentors and realizing what you have to
 do to do your job.

Q: Okay.

A: So that is where you learn it.

Q: So the answer would be no?

A: Through experience. The answer is no.

Q: There is no one authoritative text for
 your business?

 17 A-5103-14T4
 A: I'm sure there's probably [twenty] out
 there, but nobody I know corresponds to
 them. You learn on the job, and you're
 trained, and that's how you get
 experience.

 Evidential support for an expert opinion may include what

the expert has learned from personal experience and training;

however such experience, in turn, must be informed and given

content and context by generally accepted standards, practices,

or customs of the insurance industry. See N.J.R.E. 702. Here,

Hladik presented no authority supporting his opinion. There was

no reference made to any document, any written or unwritten

custom, or established practice that the broker/agent community

recognized as a duty it owes insureds.4 Nowhere in Hladik's

report or testimony does he identify the source of the standard

of care enunciated, including decisional law, by which to

measure plaintiff's claimed deficiencies or to determine whether

there was a breach of duty owed defendant. Notwithstanding

Hladik's extensive experience in the insurance industry, boiled

down to its essence, Hladik's opinion is infirm as comprised of

conclusory determinations that defendants departed from the

4
 Experts may base their opinions upon unwritten industry
standards without violating the net opinion doctrine. See,
e.g., Davis, supra, 219 N.J. at 413 (quoting Kaplan v. Skoloff &
Wolfe, P.C., 339 N.J. Super. 97, 103 (App. Div. 2001))
(recognizing that the expert's conclusions might not have been
inadmissible net opinion if he had referenced an "unwritten
custom" of the industry).

 18 A-5103-14T4
standard of practice among New Jersey insurance brokers based on

his personal view of that standard. See Pomerantz, supra, 207

N.J. at 373.

 II.

 Satec further contends the court erred in finding that,

without an expert, it could not demonstrate Nestel breached his

duty to advise Satec as to the need for flood insurance. We

review de novo the legal consequences of the exclusion of the

expert opinion as it effects Satec's ability to establish

liability. Townsend, supra, 221 N.J. at 59 (citing Davis,

supra, 219 N.J. at 405). Contrary to Satec's assertions, given

the discrete factual scenario presented herein, we hold that it

is not "common knowledge" whether Centric's actions constituted

a deviation from the accepted standard of care of a New Jersey

insurance producer. See Biunno, Current N.J. Rules of Evidence,

comment 2 on N.J.R.E. 702 (2017) ("[A] jury should not be

allowed to speculate without the aid of expert testimony in an

area where laypersons could not be expected to have sufficient

knowledge or experience.").

 Our court has instructed that the common knowledge doctrine

is to be construed narrowly. Hubbard v. Reed, 168 N.J. 387,

395-96 (2001). It applies where "jurors' common knowledge as

lay persons is sufficient to enable them, using ordinary

 19 A-5103-14T4
understanding and experience, to determine a defendant's

negligence without the benefit of specialized knowledge of

experts." Id. at 394 (citation and internal quotation marks

omitted). Ordinarily, insurance brokerage is a field beyond the

ken of the average juror. Thus, in the insurance coverage

context, the common knowledge doctrine is limited to "obvious"

cases of negligence where a broker's conduct does not comport

with Rider, supra, 42 N.J. at 476. See, e.g., Bates v. Gambino,

72 N.J. 219, 226 (1977) (per se negligence established where

broker lacked knowledge required by law); Dimarino v. Wishkin,

195 N.J. Super. 390, 393 (App. Div. 1984) (per se negligence

established where broker failed to procure coverage and notify

the client once the coverage could not be obtained).

 Here, unlike in Bates and Dimarino, the issue of breach of

duty does not rest upon "obvious" conduct such as a lack of

knowledge by Centric or its failure to procure requested

coverage or notify Satec that the requested coverage could not

be obtained. See Bates, supra, 72 N.J. at 225-26. Accordingly,

expert testimony was required to assist the jury relative to the

intricacies of the fiduciary relationship between Centric and

Satec, and any breach of duty that may have occurred. See

Triarsi v. BSC Group Servs., LLC, 422 N.J. Super. 104, 115-16

(App. Div. 2011).

 20 A-5103-14T4
 III.

 Finally, Satec argues Hanover is vicariously liable for the

negligence of Centric based on the existence of an agency

relationship between the two parties, whereby Hanover, the

principal, was at all times vicariously liable for the negligent

acts of its agent. In the alternative, Satec further argues

Centric is Hanover's agent under a theory of apparent authority.

Satec also notes that the judge failed to address this issue

while deciding summary judgment in favor of defendants. We hold

that the first argument finds no support in the law and the

second argument lacks sufficient merit to warrant discussion in

a written opinion. R. 2:11-3(e)(1)(E).

 This court has held that "[a]s a matter of elementary

agency law, the negligence of an employee-agent is imputable to

the employer-principal, who must answer for it." Johnson v. Mac

Millan, 233 N.J. Super. 56, 61 (App. Div.), remanded on other

grounds, 118 N.J. 199 (1989). "It has long been recognized[,]"

however, that imputation will not apply where "in the case of an

independent broker placing insurance for a client with an

insurance company." Id. at 62. For example, we have held that

when a broker "undertook to evaluate a client's insurance needs

and to make recommendations[,] it was acting not as the agent

for any one of the several insurers it represented but only for

 21 A-5103-14T4
[his or her] own client." Id. at 63; see also Mazur v. Selected

Risks Ins. Co., 233 N.J. Super. 219, 226 (App. Div. 1989); Avery

v. Arthur E. Armitage Agency, 242 N.J. Super. 293, 300-01 (App.

Div. 1990). Therefore, the actions of the broker were not, by

application of respondent superior, negligence of the insurer it

represented. Johnson, supra, 233 N.J. at 62.

 Applying these governing principles, we are unpersuaded by

Satec's argument that Hanover should be held vicariously liable

for the alleged negligent actions of Centric. As we held in

Johnson, in the case of an independent insurance broker, like

Centric, imputation will not apply when the broker is evaluating

a client's needs and making recommendations accordingly.

Satec's arguments are directed at Centric's failure to advise it

regarding its need for flood insurance for the property. As

such, we hold the actions of Centric may not be imputed to

Hanover.

 Affirmed.

 22 A-5103-14T4