**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3693-16T1

WILLIAM CABEZAS and
PATRICIA CABEZAS, his wife,

    Plaintiffs-Appellants,

v.

GIOVANNA SPOLETI and
VINCENT SPOLETI,

    Defendants-Respondents,

and

MICHAEL ANGELO SPOLETI
and BOROUGH OF CLIFFSIDE
PARK,

    Defendants.

_____

           Argued June 7, 2018 — Decided August 20, 2018

           Before Judges Haas and Rothstadt.

           On appeal from Superior Court of New Jersey,
           Law Division, Bergen County, Docket No. L-
           2357-15.

           Monika M. Emara argued the cause for
           appellants (Law Offices of Rosemarie Arnold,
           attorneys; Melissa A. Peace, on the briefs).

Mario C. Collitti argued the cause for respondent Giovanna Spoleti (Law Offices of Viscomi & Lyons, attorneys; Emily S. Barnett, on the brief).

John R. Knodel argued the cause for respondent Vincent Spoleti (Methfessel & Werbel, PC, attorneys; John R. Knodel and Steven A. Unterburger, on the brief).

PER CURIAM

In this slip and fall sidewalk liability action, plaintiffs William Cabezas and his wife, Patricia Cabezas, appeal from the Law Division's March 31, 2017 order awarding summary judgment in favor of defendants Giovanna Spoleti and her son, Vincent Spoleti, and dismissing plaintiffs' complaint. The complaint sought damages arising from the injuries William sustained when he fell on a sidewalk adjacent to Giovanna's home.[1] On summary judgment, it was undisputed that Vincent replaced the sidewalk years earlier and according to plaintiffs' expert, Vincent's work was defective and caused William to fall. The motion judge, however, granted defendants' motion after finding that the opinion was a "net opinion" without any foundation. On appeal, plaintiffs argue that we should reverse because the motion judge was wrong. For the reasons that follow, we disagree and affirm.

---

[1] We refer to the parties by their first names to avoid any confusion caused by their common last names.

We derive the following facts from the evidence submitted by the parties in support of, and in opposition to, the summary judgment motion, viewed in the light most favorable to plaintiffs, the parties who opposed entry of summary judgment. Edan Ben Elazar v. Macrietta Cleaners, Inc., 230 N.J. 123, 135 (2017). Giovanna, who was eighty-four years old at the time of the accident, is the owner of a home located in Cliffside Park. Vincent lives in the house next door to his mother and helps her by maintaining her property, including performing snow and ice removal during the winter. According to Vincent, on days that it snowed, he always put down salt or sand, even during a precipitation event, such as freezing rain. He typically "clean[s] the snow with a snow blower" and inspects the sidewalk and driveway, salting it with "calcium chloride." Vincent does not receive any compensation for his services.

In October 2006, Vincent replaced his mother's sidewalk after first obtaining a municipal permit for that work. After the work was completed, neither defendants nor the municipality ever received any complaints about the sidewalk, nor did the town have any record of any citations or warnings being issued to defendants about the sidewalk.

On February 6, 2014, at approximately 6:30 a.m., William walked past Giovanna's home and suddenly fell on an "icy

condition," and broke his right ankle. According to William, the sidewalk had "an accumulation of snow on the side, but . . . it was clear in the path." He did not see what caused him to fall, but after he fell, he realized there was clear "ice" on the ground.

After he fell, William called the police from his cell phone and an officer arrived immediately on the scene. William was taken to the emergency room at a nearby hospital, and remained hospitalized for two days. During that time, he underwent surgery on his right ankle.

On March 9, 2015, plaintiffs filed their complaint, which they amended on July 1, 2015, adding the Borough of Cliffside Park as an additional defendant. In their amended complaint, plaintiffs alleged that defendants negligently inspected or maintained the sidewalk located in front of Giovanna's home, which caused William "to become injured due to the presence of a hazardous and dangerous condition . . . ." According to the complaint, William slipped and fell "to the ground" on an icy sidewalk, suffering "severe and permanent injuries."

Contrary to the allegations in the complaint, Vincent testified at his deposition that "to [his] knowledge, there was never any water ponding or any ice that he ever saw" on his

mother's sidewalk.[2] He stated that he was not aware of any problems with the sidewalk, and no one ever made any complaints to him, his mother, or the town about the condition of the sidewalk.

Plaintiffs retained an engineering expert, George Gianforcaro, who prepared a report about the "dangerous hazardous conditions that existed with the improper [c]onstruction . . . in the [p]ublic [s]idewalk at" Giovanna's property, and the "[c]ode [v]iolations and [s]tandards in the [i]ndustry [v]iolations that contributed to [William's] accident."  He issued his report after inspecting the property and reviewing the parties' answers to interrogatories.

In his report, Gianforcaro determined that the "[p]roperty [o]wner and/or its [a]gent[] failed to properly [c]onstruct and . . . [m]aintain the [p]ublic [s]idewalk prior to" William's accident.  He also found that the joint material between the sidewalk slabs was "decaying and disintegrating[,] . . . which cause[d] water . . . from melting snow to course over the surface of the [sidewalk] and  create a Dam-Like effect . . . causing the water  to . . . form  ice  during  freezing  temperatures." Gianforcaro opined that had an "[e]lastomeric sealant" been used or  "a  '[c]old-[a]pplied  [j]oint  [s]ealant[,]'  which  is  a

_____

[2]  Giovanna was unable to attend her own deposition due to a medical condition.

A-3693-16T1

[s]tandard in the [i]ndustry," been applied to the joint material, the material would have been able to prevent ice from forming on the sidewalk; thus, preventing slip and fall accidents.

While the report cited to general construction and property maintenance regulations and ordinances, it did not identify any building code or industry standard that required construction of a sidewalk in the manner Gianforcaro described. Nevertheless, his report stated that "[i]t is [s]tandard and [c]ustomary within the [c]oncrete [c]onstruction [i]ndustry to install a Cold-Applied, Urethane Elastometric Sealant to the [c]onstruction [j]oints in [w]alkways . . . in order to protect and create a [w]alking [s]urface that is on an even and uniform plane with the adjacent [w]alking [s]urface." As to defendants' failure to remove snow and ice from the sidewalk, the report stated that:

> It is [s]tandard and [c]ustomary within the [s]now [r]emoval [i]ndustry that in case of snow or ice which may be so frozen to the surface of the [w]alkway and/or surrounding areas as to make it impractical to remove the snow and ice from such areas, the snowy and icy areas shall be thoroughly covered with [s]alt and s]and.

Relying on unidentified standards within the building industry and municipal codes, the report also stated that a property owner was obligated to keep their property "in a proper state of repair, and maintained free of dangerous conditions[,]"

A-3693-16T1

which required the application of the "Cold-Applied Joint Sealant" described in the report.

During his deposition, Gianforcaro clarified that New Jersey's codes and ordinances do not require the use of "elastomeric material" during sidewalk construction, as they only require that one has "to construct a safe sidewalk and it's up to you to construct that safe sidewalk . . . ." He further explained that other engineers or architects will tell you that "'[a]fter you construct [a] concrete sidewalk, you must come back and install elastomeric material over the top of the construction joint,' but the code won't say that." Moreover, he testified that "[t]oday, most companies are putting the elastomeric caulk right after the concrete is poured. . . . because it has a longer life expectancy than [another] type of material."

According to Gianforcaro's "[p]ersonal engineering opinion," a properly constructed sidewalk construction joint should be covered with the sealant. (Emphasis added). He stated that his "personal engineering opinion" was based upon his "experience, the research, [and his] education." Gianforcaro further explained that he could "supply additional information" that a properly constructed sidewalk included covering a joint with the material he suggested, but that the information would not say that it was a required process that "must" be followed. However, he did

A-3693-16T1

express that a manufacturer will state that it uses elastomeric caulk on places such as "concrete sidewalks, concrete retaining walls[,]" and "[c]oncrete decks on parking garages."

After the completion of discovery, Giovanna, her son, and the Borough moved for summary judgment seeking dismissal of plaintiffs' complaint. Vincent and his mother argued they were not liable for William's injuries because "snow melting [and/or] refreezing" is "not a dangerous condition[,]" and Vincent did not "defectively or improperly shovel[] the snow . . . on the sidewalk." Moreover, they asserted that William did not "remember if [he] saw anything, but [he did] know that the sidewalk was clear up until the point that [he] fell." They also argued that plaintiffs' expert's report was "a net opinion and [that] it should be barred" because Gianforcaro gave his personal opinion as to whether it was industry standard to apply elastomeric sealant to concrete construction, and did not "cite to any specific standard, . . . code, . . . [or] any construction ANSI standards promulgated by the various construction groups that are out there . . . ."

Relying on their expert's report, plaintiffs responded by arguing that "[b]ecause of the construction and joints failure to be maintained, . . . water was able to pool around the area [on the sidewalk], creating a hazard and ice to form around that area."

"Absent the owner's liability to maintain the [sidewalk], . . . plaintiff wouldn't have become injured." Plaintiffs contended that a genuine issue of material fact exists as to the negligent maintenance of the sidewalk, which "should [go] before a jury to decide."

Plaintiffs disagreed with defendants' assessment of Gianforcaro issuing a net opinion, arguing that the expert could not say in his report or at the deposition "that a New Jersey code" instructs the use of the sealant "because the codes do not speak to that at all." According to plaintiffs, Gianforcaro "had to give his opinion based on the standard of the industry," which he "maintains [is] that the . . . sealant should be used on a sidewalk to maintain its safety."

After considering the parties' written and oral arguments, Judge Estella M. De La Cruz granted summary judgment to all defendants, placing her reasons on the record. With respect to Giovanna and Vincent, the judge found that the record did not establish that "the property owner Giovanna . . ., [or] her agent, Vincent . . .," negligently installed the sidewalk, and thus, plaintiffs could not establish that they owed William a duty. Quoting from our opinion in Taylor v. DeLosso, 319 N.J. Super. 174 (App. Div. 1999), the judge observed it was plaintiffs' burden to "produce expert testimony upon which the jury could find that the

consensus of the particular profession involved recognizes the existence of the standard defined by the expert." She found that there was no "evidential support offered by the expert establishing the existence of" an industry standard "defined in any code or any guide." The judge acknowledged that Gianforcaro gave "an expert opinion[,]" but she concluded that "the manufacturers who require the sealant" to be used "is not an industry standard[,]" but rather, "a requirement or a suggestion by a manufacturer . . . ." This was supported by Gianforcaro's deposition where he stated that a manufacturer will suggest that one use the sealant in a number of places, including a concrete sidewalk. Judge De La Cruz concluded that the expert's opinion was insufficient, "and, therefore, [did] not carry the day to create a breach of duty."

On March 31, 2017, Judge De La Cruz entered orders granting summary judgment and dismissing the complaint. Plaintiffs filed a motion for reconsideration and while that motion was pending, filed this appeal. Judge De La Cruz denied the reconsideration motion on June 30, 2017.

On appeal from the orders granting summary judgment to Giovanna and Vincent, plaintiffs acknowledge that New Jersey immunizes homeowners like Giovanna from liability for injuries arising out of "a fall due to naturally occurring icy conditions on her residential property." However, they contend that an

exception to the general rule applies in this case because the property owner replaced her sidewalk and did so negligently, "thereby creating a dangerous condition." Plaintiffs argue that their expert established defendants' negligent construction to the sidewalk where William fell, and that the judge erred by granting summary judgment based solely on her finding that their expert's report "constituted a so-called 'net opinion[.]'"

Relying on <u>Townsend v. Pierre</u>, 221 N.J. 36, 55 (2015) and <u>Beadling v. William Bowman Assocs.</u>, 355 N.J. Super. 70, 87 (App. Div. 2002), plaintiffs argue that Gianforcaro's expert report does not constitute a net opinion because it was "factually supported, . . . was not 'speculative,' and did not merely express a 'personal view.'" To support this contention, plaintiffs assert that Gianforcaro based his report on an "inspection of the accident site" in August 2015 and "answers to interrogatories by [William] and defendants." Plaintiffs note that during his inspection, Gianforcaro found that the "construction joint material" in the sidewalk was "decaying and disintegrating, creating an opening in the sidewalk, which caused water to build-up . . . ." Moreover, they point out that Gianforcaro "cited to several standards in the construction industry that stand generally for the proposition that public sidewalks be maintained

free of dangerous, hazardous conditions, so that persons may travel the area in a safe manner." Finally, plaintiffs argue that despite the judge's finding that Gianforcaro expressed "a personal opinion of his," he in fact gave a "professional opinion, which . . . reflected an industry standard of which he was cognizant by virtue of his many years of experience." Thus, they contend that the motion judge erred in considering "the absence of written industry standards to be dispositive," and the court's decision should be reversed on appeal. We disagree.

We review the disposition of a summary judgment motion de novo, applying the same standard used by the motion judge. Conley v. Guerrero, 228 N.J. 339, 346 (2017); see also Townsend, 221 N.J. at 59. We must analyze:

> the competent evidential materials submitted by the parties to identify whether there are genuine issues of material fact and, if not, whether the moving party is entitled to summary judgment as a matter of law. "Summary judgment should be denied unless" the moving party's right to judgment is so clear that there is "no room for controversy."
>
> [Ellis v. Hilton United Methodist Church, ___ N.J. Super. ___ (2018) (slip op. at 4) (citations omitted).]

If no genuine issue of material fact exists, the inquiry then turns to "whether the trial court correctly interpreted the law."

DepoLink Court Reporting & Litig. Support Servs. v. Rochman, 430 N.J. Super. 325, 333 (App. Div. 2013).

It is beyond cavil that "[g]enerally, absent negligent construction or repair, a [home]-owner does not owe a duty of care to a pedestrian injured as a result of the condition of the sidewalk abutting the [home]owner's property." Ellis, __ N.J. Super. at __ (slip op. at 5) (quoting Dupree v. City of Clifton, 351 N.J. Super. 237, 241 (App. Div. 2002) (citing Stewart v. 104 Wallace Street, Inc., 87 N.J. 146, 153 (1981)), aff'd o.b., 175 N.J. 449 (2003)). Neither "breach of an ordinance directing private persons to care for public property," nor a "property owner['s failure] to clear the snow and ice from public sidewalks abutting their land" can be considered a breach of a duty owed to an injured plaintiff, "unless through [the owner's] negligence a new element of danger or hazard, other than one caused by natural forces, [was] added to the safe use of the sidewalk by a pedestrian." Luchejko v. City of Hoboken, 207 N.J. 191, 200-01 (2011) (citations omitted).

When attempting to prove that a homeowner created a "new danger" through deficient construction or repair, a net opinion is insufficient to satisfy a plaintiff's burden on a motion for summary judgment. Polzo v. Cty. of Essex, 196 N.J. 569, 583-84 (2008); Smith v. Estate of Kelly, 343 N.J. Super. 480, 497-98

(App. Div. 2001). A net opinion is one rendered with only "an expert's bare opinion that has no support in factual evidence or similar data . . .[,] which is not admissible and may not be considered." Pomerantz Paper Corp. v. New Cmty. Corp., 207 N.J. 344, 372 (2011) (citation omitted). In essence, the net opinion "rule requires that an expert 'give the why and wherefore' that supports the opinion, 'rather than a mere conclusion.'" Townsend, 221 N.J. at 54 (citations omitted). The net opinion rule "frequently focuses . . . on the failure of the expert to explain a causal connection between the act or incident complained of and the injury or damage allegedly resulting therefrom." Buckelew v. Grossbard, 87 N.J. 512, 524, (1981) (citations omitted).

Under the rule, "a trial court must ensure that an expert is not permitted to express speculative opinions or personal views . . . ." Townsend, 221 N.J. at 55. Thus, "an expert offers an inadmissible net opinion if he or she 'cannot offer objective support for his or her opinions, but testifies only to a view about a standard that is "personal."'" Davis v. Brickman Landscaping, Ltd., 219 N.J. 395, 410 (2014) (quoting Pomerantz, 207 N.J. at 373). Experts "must be able to point to generally accepted, objective standards of practice and not merely standards personal to them." Riley v. Keenan, 406 N.J. Super. 281, 296 (App. Div. 2009). As the Supreme Court explained in Pomerantz,

> [I]f an expert cannot offer objective support for his or her opinions, but testifies only to a view about a standard that is "personal," it fails because it is a mere net opinion.
>
> . . . .
>
> It is insufficient for . . . [an] expert simply to follow slavishly an "accepted practice" formula; there must be some evidential support offered by the expert establishing the existence of the standard. A standard which is personal to the expert is equivalent to a net opinion.
>
> [207 N.J. at 373 (citation omitted).]

"Evidential support for an expert opinion may include what the expert has learned from personal experience and training; however such experience, in turn, must be informed and given content and context by generally accepted standards, practices, or customs of the . . . industry." Satec, Inc. v. Hanover Ins. Grp., Inc., 450 N.J. Super. 319, 333-34 (App. Div. 2017). There must be some "authority supporting [the] opinion," which can take the form of "any document, any written or unwritten custom, or established practice that the [industry] recognized as a duty it owes . . . ." Ibid. "[T]he source of the standard of care enunciated, . . . by which to measure plaintiff's claimed deficiencies or to determine whether there was a breach of duty owed defendant[,]" must be identified. Id. at 334.

A-3693-16T1

Applying these guiding principles here, we conclude that Judge De La Cruz correctly determined that plaintiffs' expert's opinion was a net opinion expressing Gianforcaro's view of what he believed, as an engineer, to be good construction practices. His opinion "lacked any foundation of the sort required for admissibility." Pomerantz, 207 N.J. at 374. "There [was] no suggestion that there are [authoritative materials that] would support the opinions about accepted" sidewalk construction practices, or any "basis on which to draw the conclusions offered that" Vincent's construction of the sidewalk in 2006 was not completed in accordance with industry standards and created a hazardous condition that caused William's injuries. Ibid. "In the end, the expert offered a series of personal views that were net opinions and therefore not worthy of consideration." Ibid. "Notwithstanding [Gianforcaro's] extensive experience . . ., boiled down to its essence, [his] opinion is infirm as comprised of conclusory determinations that defendants departed from the standard of care [owed by a homeowner to third parties] based on his personal view of that standard." Satec, Inc., 450 N.J. Super. at 334 (citing Pomerantz, 207 N.J. at 373).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3693-16T1