**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3279-19T3

BELLA MARTUCCI, a minor,
and MICHAEL and JESSICA
MARTUCCI,

     Plaintiffs-Respondents,

v.

ZAPERLA INC. and ZAMPERLA
ENTERPRISES INC.,

     Defendants-Appellants,

and

SIX FLAGS GREAT ADVENTURE,
LLC, and SIX FLAGS THEME
PARKS INC,

     Defendants.[1]

_____

Submitted July 28, 2020 – Decided August 6, 2020

Before Judges Sumners and Mayer.

---

[1] The record provided does not disclose why these defendants are either no longer in the case or are not parties to the order being appealed.

On appeal from the Superior Court of New Jersey, Law Division, Ocean County, Docket No. L-2518-17.

Sweeney & Sheehan, PC and Ryon Yemm (The Sheehan Firm, PC) of the Illinois bar, admitted pro hac vice, attorneys for appellant (Andrew R. Siegeltuch and Ryon Yemm, on the briefs).

Jeffrey N. Stern, attorney for respondents.

PER CURIAM

In this products liability action pursuant to the New Jersey Products Liability Act (PLA), N.J.S.A. 2A:58C-1 to -11, we granted leave for defendant Zamperla, Inc.[2] to appeal the motion court's order denying it summary judgment to dismiss the claims of plaintiffs Bella Martucci, a minor, and Michael and Jessica Martucci, Bella's parents, on the grounds their liability expert's report was inadmissible as net opinion. The court decided to determine whether to preclude the expert's opinion at a <u>Rule</u> 104 hearing prior to trial. We conclude the expert rendered a net opinion; thus, the court mistakenly applied its discretion to require a <u>Rule</u> 104 hearing. Nonetheless, summary judgment dismissal of plaintiff's complaint was not appropriate pending the court's consideration of plaintiffs' request to present another liability expert who had been previously identified and plaintiff's contention Zamperla is liable under the

---

[2] Improperly pled as Zaperla, Inc. and Zamperla Enterprises, Inc.

theory of res ipsa loquitor, neither of which were addressed in defendant's summary judgment motion. Accordingly, we reverse and remand.

I.

On May 26, 2015, six-year-old Bella was a patron at Six Flags Great Adventure Park (Great Adventure) enjoying one of its many amusement rides, the Enchanted Teacups. After the ride had ended, she was exiting one of the ride's twelve "teacups" when the ride's door closed on her right index finger, severing her the flexor tendon.

Zamperla manufactured the ride in October 1995, and installed it at Great Adventure in May 1996, where it has remained in operation. Since the ride's installation, Zamperla has not performed any additional work or service on the ride, including on the teacups' doors. The New Jersey Department of Community Affairs has regularly inspected the ride and permitted the ride's operation.

Plaintiffs sued Zamperla and Great Adventure, among other parties, for the injury to Bella's hand. As to Zamperla, plaintiffs' expert, Dennis R. Andrews PhD., PSP, CECD, WSO-CSS, opined that "within a reasonable degree of safety certainty, sole cause of the injury to [Bella] was the insufficient timing of the exit door of the teacup[s] ride." According to Dr. Andrews, his inspection of

A-3279-19T3

one of the twelve teacups on the ride revealed the "exit door close[d] in approximately 1.2 seconds" instead of the allegedly required closure of "no less than 1.5 seconds from 70% open."  Citing the Americans with Disabilities Act Accessibility Guidelines (ADAAG) 4.13.10, ICC, and American National Standard Product Safety Signs and Labels (ANSI) 117.1, Dr. Andrews furthered stated: "the door shall be adjusted so that from an open position, 90°, the time required to reach 12° from the latch is a minimum of 5 seconds.  The door should be adjusted to close from a position of 70° to 3 inches from the latch in no sooner than 3 seconds."  He furthered asserted Zamperla was negligent in failing "to inspect and maintain the [ride's] exit door so [Bella] would have sufficient time to exit . . . the teacup[s] ride safely."

At his deposition, Dr. Andrews maintained at the time of the accident, the gate on the teacup Bella was exiting closed "too quickly."  He further opined Zamperla was negligent because it failed to inspect the teacups ride's door, to ensure the door did not close "too quickly."  Dr. Andrews, however, admitted the ADAAG and ANSI standards cited in his report apply only to interior building doors with mechanical, hydraulic, or pneumatic closing devices which automatically open and close doors for individuals who need assistance; none of which are present on the teacups ride.  Dr. Andrews admitted he was unaware

of any legal standard requiring Zamperla, or any designer, manufacturer, or distributor of the teacups amusement ride to comply with the ADAAG or ANSI standards. The following colloquy occurred:

> [Question:] Was there any requirement for the designer or manufacturer of this amusement ride or the distributor of this amusement ride to comply with ADAAG 4:13-10?
>
> [Dr. Andrew:] No, other than common sense and maybe a moral value.
>
> [Question:] But there's no legal requirement, correct?
>
> [Dr. Andrew:] Not that I'm aware of.
>
>    . . . .
>
> [Question:] Is there any legal requirement for any designer, manufacturer or distributor to comply with ANSI 117.1?
>
>    . . . .
>
> [Dr. Andrew:] I am not aware of it.

Following discovery, Zamperla moved for summary judgment arguing plaintiffs' claims are barred under the Statute of Repose (SOR), N.J.S.A. 2A:14-1.1(a), because Bella's injury on the teacups ride, an improvement of real property, occurred more than ten years after the ride was installed. Zamperla

5

also argued plaintiffs' complaint should be dismissed because Dr. Andrews' opinion that it was liable for Bella's injury was inadmissible net opinion.

The court rendered an oral decision and entered an order denying the motion. The court rejected Zamperla's contention plaintiffs' claims were barred under the SOR. However, the court did not rule on Zamperla's contention that Dr. Andrews' opinion – Bella's injury was caused by the teacups' door closing too fast – was inadmissible because it was his "personal" or "moral" opinion and not based on a recognized standard. Zamperla contended Dr. Andrews inspected the ride four years after the accident and did not know which teacup Bella was exiting when she was injured. The court suggested there was some merit to Zamperla's contention it had no obligation to continually inspect the teacups ride since it was sold and installed at Great Adventure nineteen years ago. The court ruled the admissibility of Dr. Andrews opinion should be decided at a Rule 104 hearing prior to trial.

After we granted leave to appeal the court's order denying summary judgment, the court submitted a written decision pursuant to Rule 2:5-1(b) amplifying the reasons regarding its determination the SOR did not apply to Bella's injury because the teacups ride is a removable structure not adding "permanent value to the real property" and not "specialized in any meaningful way that would alter

the mechanics of the ride." The court did not amplify its reasons for deciding to hold a Rule 104 hearing regarding the admissibility of Dr. Andrews' expert opinion.

II.

A.

Before us, Zamperla contests the court's order deferring the determination of whether to find Dr. Andrews' expert opinion inadmissible as net opinion to a Rule 104 hearing. The decision on whether to hold a Rule 104 hearing is within the sound discretion of the trial court. Kemp v. State, 174 N.J. 412 (2002). "Absent a clear abuse of discretion, an appellate court will not interfere with the exercise of that discretion." Carey v. Lovett, 132 N.J. 44, 64 (1993) (citing Henningsen v. Bloomfield Motors, Inc., 32 N.J. 358, 411 (1960)).

In Kemp, the trial court granted summary judgment – without conducting a hearing – finding the opinion of the plaintiffs' expert was not sufficiently reliable under N.J.R.E. 702. 174 N.J. at 415, 423. The Supreme Court reversed, finding plain error in the trial court's refusal to conduct a hearing to determine the testimony's reliability. Id. at 432.

Kemp followed Rubanick v. Witco Chem. Corp., 125 N.J. 421 (1991). In Rubanick, the Court stated that when a trial court is "faced with a not yet

generally accepted theory of causation," it should conduct a "hearing to assess the soundness of the proffered methodology and the qualifications of the expert." Id. at 454. A "[p]laintiff's burden is to demonstrate that the methodology used by [the expert] . . . is consistent with sound scientific principles and methodologies accepted in the medical and scientific communities." Kemp, 174 N.J. at 431.

This case, however, does not involve a unique causation theory for which we conclude it would have been sounder practice to afford plaintiffs a hearing to have Dr. Andrews' testify regarding his opinion that Zamperla's negligent design or negligent inspection of the teacups' doors. The grounds for his opinion were sufficiently explained in his report and deposition testimony and were not based upon a complicated scientific theory. See id. at 429 (citing Padillas v. Stork-Gamco, Inc., 186 F. 3d 412, 417-18 (3d Cir. 1999) (noting the Third Circuit held the district court abused its discretion in not conducting an in limine hearing where the plaintiff's expert's opinions were based on scientific validity, which "were not sufficiently explained and the 'reasons and foundations for them inadequately and perhaps confusingly explicated'")).

Notably, plaintiff did not file a sworn statement from Dr. Andrews explaining the deficiencies in his report or deposition testimony in response to

defendant's motion. And before us, plaintiffs have not identified any facts he could explain at a hearing. See Shelcusky v. Garjulio, 172 N.J. 185, 201-02 (2002) (noting the utility of an affidavit "where the contradiction is reasonably explained, where an affidavit does not contradict patently and sharply the earlier deposition testimony, or where confusion or lack of clarity existed at the time of the deposition questioning and the affidavit reasonably clarifies the affiant's earlier statement"). Thus, the concerns that prompted the Court in Kemp and Rubanik to require a Rule 104 hearing are simply not present here.

B.

Before turning to the merits of defendant's summary judgment motion to preclude the admissibility of Dr. Andrews' report as net opinion, we point to the standards guiding our appellate review. We review a summary judgment order de novo, applying the same standard as the trial court. Townsend v. Pierre, 221 N.J. 36, 59 (2015). We "consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995); see also R. 4:46-2(c). To grant the motion, the evidence in the record must be "so one-sided that one party must prevail as a matter of law."

Brill, 142 N.J. at 540 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)).

Plaintiffs' claims against Zamperla are based on the PLA. To prevail under the PLA, a plaintiff must demonstrate three prima facie elements: "[(1)] the product was defective, [(2)] that the defect existed when the product left the manufacturer's control, and [(3)] that the defect proximately caused injuries to the plaintiff, a reasonably foreseeable or intended user." Myrlak v. Port Auth. of N.Y. and N.J., 157 N.J. 84, 97 (1999) (citations omitted).

"To prove both the existence of a defect and that the defect existed while the product was in the control of the manufacturer, a plaintiff may resort to direct evidence, such as the testimony of an expert who has examined the product, or, in the absence of such evidence, to circumstantial proof." Id. at 98 (citations omitted). Additionally, "[a] plaintiff may [also] establish a defect by 'negat[ing] other causes of the failure of the product for which the defendant would not be responsible, in order to make it reasonable to infer that a dangerous condition existed at the time the defendant had control [of the product].'" Id. at 99 (third and fourth alterations in original) (quoting Scanlon v. Gen. Motors Corp., 65 N.J. 582, 593-94 (1974)). "[A] plaintiff does not have to negate all possible

causes of failure, only those likely causes of failure." Ibid. (citing Scanlon, 65 N.J. at 594).

Where, as in this case, plaintiffs' expert opines Bella was injured by a defective teacup door, N.J.R.E. 703 requires the opinion to be "grounded in 'facts or data derived from (1) the expert's personal observations, or (2) evidence admitted at the trial, or (3) data relied upon by the expert which is not necessarily admissible in evidence but which is the type of data normally relied upon by experts.'" Townsend, 221 N.J. at 53 (citation omitted) (quoting Polzo v. Cty. of Essex, 196 N.J. 569, 583 (2008)). "The net opinion rule is a 'corollary of [N.J.R.E. 703] . . . which forbids the admission into evidence of an expert's conclusions that are not supported by factual evidence or other data.'" Id. at 53-54 (alterations in original) (quoting Polzo, 196 N.J. at 583). The rule "mandates that experts 'be able to identify the factual bases for their conclusions, explain their methodology, and demonstrate that both the factual bases and the methodology are reliable.'" Id. at 55 (quoting Landrigan v. Celotex Corp., 127 N.J. 404, 417 (1992)). "An expert's conclusion 'is excluded if it is based merely on unfounded speculation and unquantified possibilities.'" Ibid. (quoting Grzanka v. Pfeifer, 301 N.J. Super. 563, 580 (App. Div. 1997)).

A-3279-19T3

Under the net opinion rule, "a trial court must ensure that an expert is not permitted to express speculative opinions or personal views . . . ." Id. at 55. "[A]n expert offers an inadmissible net opinion if he or she 'cannot offer objective support for his or her opinions, but testifies only to a view about a standard that is personal.'" Davis v. Brickman Landscaping, Ltd., 219 N.J. 395, 410 (2014) (quoting Pomerantz Paper Corp. v. New Cmty. Corp., 207 N.J. 344, 373 (2011)); see also Riley v. Keenan, 406 N.J. Super. 281, 296 (App. Div. 2009) (explaining experts "must be able to point to generally accepted, objective standards of practice and not merely standards personal to them").

"Evidential support for an expert opinion may include what the expert has learned from personal experience and training; however such experience, in turn, must be informed and given content and context by generally accepted standards, practices, or customs of the . . . industry." Satec, Inc. v. Hanover Ins. Grp., Inc., 450 N.J. Super. 319, 333 (App. Div. 2017). There must be some "authority supporting [the] opinion," which can take the form of "any document, any written or unwritten custom, or established practice that the [industry] recognized as a duty it owes . . . ." Ibid. "[T]he source of the standard of care enunciated, . . . by which to measure plaintiff's claimed deficiencies or to

A-3279-19T3

determine whether there was a breach of duty owed [by] defendant[,]" must be identified.  Id. at 334.

Applying the above principles to our review of the record, we are convinced Dr. Andrews rendered an inadmissible net opinion.  We find support for this conclusion in arguments raised before us by Zamperla.  As Zamperla points out, Dr. Andrews' opinion that Bella was injured because the teacups ride door closed too quickly was based upon his: (1) "personal opinion, not on accepted objective standard; and (2) th[ose] opinions are based on bare conclusions unsupported by the factual evidence."  Zamperla further maintains because neither plaintiffs nor Dr. Andrews were aware which teacup Bella was riding in when she was injured, there was no factual basis for his opinion that the door on her teacups ride closed too quickly because he only inspected one teacup.

In addition, Zamperla points out Dr. Andrews admitted he had no idea if the condition of the teacup he inspected was the same as when Bella was injured four years later, therefore he had no idea how quickly the door closed when Bella exited the ride.  Last, Zamperla asserts Dr. Andrews admitted in his deposition he was aware of no ongoing duty owed by Zamperla to continually inspect and maintain the teacups since its installation at Great Adventure

nineteen years prior to Bella's injury. Simply put, Dr Andrews' opinion is speculative, based on personal views, and devoid of any engineering standards or published studies for the safe design of the teacups ride or similar amusement rides.

As for Dr. Andrews' opinion Zamperla was negligent in not inspecting the teacups ride, this claim is without merit. As Zamperla correctly argues, Dr. Andrews failed to cite any legal standard or contractual obligation requiring it to inspect the ride. Further, because Dr. Andrews failed to identify a recognized timing standard for when the teacups ride's doors should close, there is no basis for his opinion an inspection would have revealed a defect.

In sum, the trial court mistakenly applied its discretion is not considering the merits of Zamperla's summary judgment motion and should have precluded Dr. Andrews' inadmissible net opinion.

### III.

Finally, plaintiffs claim their action is still viable against Zamperla without Dr. Andrews' expert opinion because C.J. Abrams, an expert they retained prior to Dr. Andrews, can serve as their liability expert witness. Furthermore, they contend their action remains viable under res ipsa loquitor. Zamperla contends it is too late for plaintiffs to add another expert should Dr.

14

Andrews' testimony be barred, and there is no merit that res ipsa loquitor applies to Bella's injury. Since these arguments were not raised before the trial court, they will not be considered on appeal because they do not "'go to the jurisdiction of the trial court or concern matters of great public interest.'" Zaman v. Felton, 219 N.J. 199, 226-27 (2014) (quoting Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973)).

The court shall conduct a case management conference within thirty days of our decision to determine the manner in which the parties will address plaintiffs' intentions to rely upon Abrams as their liability expert and their alternative liability theory of res ipsa loquitor.

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3279-19T3