**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited.  R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1369-20

SANDRA ROENING and
ROBERT ROENING,

      Plaintiffs-Appellants,

v.

CITY OF ATLANTIC CITY and
ACPD OFFICER LINK,

      Defendants-Respondents.

_____

Submitted November 29, 2021 – Decided January 18, 2022

Before Judges Sumners and Vernoia.

On appeal from the Superior Court of New Jersey, Law Division, Atlantic County, Docket No. L-2929-18.

Westmoreland Vesper Quattrone & Beers, PA, attorneys for appellants (R.C. Westmoreland, on the briefs).

George N. Polis, attorney for respondents.

PER CURIAM

Plaintiffs Sandra Roening and Robert Roening, wife and husband, appeal the Law Division's summary judgment order dismissing their personal injury action under the New Jersey Tort Claims Act (TCA), N.J.S.A. 59:1-1 to -12-3, against defendants City of Atlantic City (the City) and Atlantic City Police Officer Rich Link.[1]  We affirm.

I.

Since this is an appeal from a summary judgment order in favor of defendants, our recitation of the facts is derived from the evidence submitted by the parties in support of, and in opposition to, the summary judgment motion, viewed in the light most favorable to plaintiffs by giving them the benefit of all favorable inferences.  Angland v. Mountain Creek Resort, Inc., 213 N.J. 573, 577 (2013).

On an April 2018 afternoon, Sandra[2] was walking on the Atlantic City boardwalk when she tripped and fell on a raised nail protruding from a board and fractured her right shoulder.  A few minutes after her fall, photos were taken of the nail by an eyewitness.  According to Robert, the raised portion of the nail,

---

[1]  Officer Rich Link's first name is not set forth in the caption.

[2]  To avoid confusion, we refer to plaintiffs by their first names because they have the same last name.  We mean no disrespect.

A-1369-20

which was not measured at the time of the accident, had a bluish tint without any rustiness, and was fixed by the time he returned the next day. Link was summoned to the accident and, wearing a body camera, he video recorded the assistance he gave Sandra. He also radioed for an ambulance to assist Sandra. The recording was auto-deleted six months later in accordance with the City's protocols.

Plaintiffs filed a TCA suit claiming the City was liable for Sandra's injury and Robert's per quo claim for loss of her services, companionship, and society because it failed to repair a dangerous condition, the protruding nail in the boardwalk. They also sought damages against Link for wrongfully spoliating his body camera video of the accident scene.

Discovery revealed the City's designated boardwalk inspector, Dennis McReynolds, inspected the approximately four-and-a-half-mile long boardwalk consisting of about 80,000 nails and screws for tripping hazards five days a week, twice a day. When shown a photo of the raised nail at deposition, he stated that he could not tell how long it had been raised.

Plaintiffs' liability expert, Francesco Tedesco, a former Ocean City boardwalk inspector, authored a report stating the City was liable for Sandra's fall but he did not opine how long the nail was in a raised condition prior to her

A-1369-20

accident. He also stated that the City's clerk and chief of police were negligent in in not preserving and securing Link's body camera video and Boardwalk camera video footage. He did not assert that Link was responsible for the destruction of his body camera video.

At the conclusion of discovery, defendants moved for summary judgment, arguing plaintiffs did not satisfy the requirements of the TCA and there was no merit to the spoilation claim because the body camera video did not depict Sandra's fall and there was a photo of the protruding nail evidencing the dangerous condition. In response, Tedesco prepared a supplemental report, this time stating that upon viewing the photo of the nail, he believed that, based on its rusty condition, it had been raised for "at least three months or more" before Sandra's fall. Prior to conducting argument on the motion, the court held a Rule 104 hearing, regarding the admissibility of Tedesco's opinion.

At the hearing, Tedesco testified the "nail has been up for a while . . . the patina[3] along the nail is dark and where the top is shiny because it was worn off from foot traffic and friction." When describing his methodology for

---

[3] Patina is "a usually green film formed naturally on copper and bronze by long exposure or artificially (as by acids) and often valued aesthetically for its color[.]" Patina, <u>Merriam-Webster.com Dictionary</u> (2022), https://www.merriam-webster.com/dictionary/patina.

4

determining how long the nail was above the boardwalk surface, he stated, "I've always just used – the patina and the fact that these nails were coated at one time. . . . [B]ut they're over [twenty] years old.  [The City hasn't] used nails in the boardwalk [for] at least [twenty] years."

Following the hearing, the parties' written summations, and motion argument, the court entered an order granting defendants' summary judgment. In a detailed twenty-page, single-spaced memorandum of decision, the court determined the protruding nail was a dangerous condition under the TCA, but plaintiffs failed to establish the statutory requirements that the City[4] had actual or constructive notice of the dangerous condition and that the City's failure to repair it was due to palpably unreasonable conduct.

The court prefaced its ruling by finding Tedesco's opinion was inadmissible net opinion.  In particular, the court reasoned he

> did not adequately address any factual or scientific basis on either the location or age of the subject nail . . . was involved in [Sandra's] accident.  Additionally, his testimony runs counter to [Robert's] testimony that the nail was no longer raised following the incident when he returned later to the site.

---

[4] The court's decision speaks to defendants collectively, however, plaintiffs' allegations regarding the failure to repair a dangerous condition pertain only to the City.  The claims against Link are limited to the spoilation of the body camera video.  Thus, we clarify that the TCA statutory requirements regarding the dangerous condition pertain to the City.

A-1369-20

. . . .

> . . . Tedesco merely offered an unsupported bare conclusion regarding the subject nail and the length of time it protruded from the boardwalk. The [c]ourt finds the opinion lacked any foundation and was simply based off of []Tedesco's perception of the corrosion relative to another piece of hardware located nearby. Indeed, []Tedesco did not offer any factual or scientific support for his conclusion of the nail's age or the subject nail as this [c]ourt found it was no longer raised a day later as testified by [Robert]. . . . [Tedesco] is not a metallurgist and is not competent to opine as to the age of the subject metal nail he saw simply by his observation alone of rust. . . . Tedesco's opinion on the nail is a net opinion and inadmissible.

With the exclusion of Tedesco's opinion, the court found that plaintiffs failed to prove defendants had actual or constructive notice of the raised nail. It also found they made no showing that defendants' lack of notice of the dangerous condition was the result of palpably unreasonable conduct. Specifically, the court found

> no reasonable fact[]finder could conclude . . . [the City's] practice of inspecting and repairing [the] boardwalk in this case was palpably unreasonable. The City employs a full-time boardwalk inspector [whose] job is to inspect the boardwalk by walking and traversing the City's boardwalk by vehicle. [He] inspects the boardwalk five days per week and two times per day looking for defects such as tripping hazards. The over four-mile[-]long boardwalk contains a vast number of nails and other pieces of hardware as

6

well as lumber. Under no circumstances would it be palpably unreasonable for the City's inspector to fail to notice one protruding nail as presented here.

On appeal, plaintiffs argue the court erred in finding: (1) Tedesco's opinion that the rusting nail had been protruding from the boardwalk for a long time was inadmissible net opinion; and (2) the City's conduct in failing to repair the protruding nail was not palpably unreasonable.[5]

II

Before addressing the grant of summary judgment, we consider the court's determination that Tedesco's report was inadmissible net opinion. "The admission or exclusion of expert testimony is committed to the sound discretion of the trial court." Townsend v. Pierre, 221 N.J. 36, 52 (2015) (citing State v. Berry, 140 N.J. 280, 293 (1995)). "As a discovery determination, a trial court's grant or denial of a motion to strike expert testimony is entitled to deference on appellate review." Ibid.

---

[5] The court did not specifically mention its reasons for dismissing the spoilation claim against Link. Because plaintiffs do not brief the dismissal of the claim on appeal, we deem it abandoned. Pressler & Verniero, Current N.J. Court Rules, cmt 5 on R. 2:6-2 (2022); see also Sklodowsky v. Lushis, 417 N.J. Super. 648, 657 (App. Div. 2011) ("An issue not briefed on appeal is deemed waived.").

"When, as in this case, a trial court is 'confronted with an evidence determination precedent to ruling on a summary judgment motion,' it 'squarely must address the evidence decision first.'" Id. at 53 (quoting Estate of Hanges v. Metro. Prop. & Cas. Ins., 202 N.J. 369, 384-85 (2010)).  "Appellate review of the trial court's decisions proceeds in the same sequence, with the evidentiary issue resolved first, followed by the summary judgment determination of the trial court." Ibid.  (citing Hanges, 202 N.J. at 384-85).

N.J.R.E. 703 requires an expert's opinion be "grounded in 'facts or data derived from (1) the expert's personal observations, or (2) evidence admitted at the trial, or (3) data relied upon by the expert which is not necessarily admissible in evidence but which is the type of data normally relied upon by experts.'" Ibid. (quoting Polzo v. Cnty. of Essex, 196 N.J. 569, 583 (2008)).  "The net opinion rule is a 'corollary of [N.J.R.E. 703] . . . which forbids the admission into evidence of an expert's conclusions that are not supported by factual evidence or other data.'" Id. at 53-54 (alterations in original) (quoting Polzo, 196 N.J. at 583).  The rule "mandates that experts 'be able to identify the factual bases for their conclusions, explain their methodology, and demonstrate that both the factual bases and the methodology are reliable.'" Id. at 55 (quoting Landrigan v. Celotex Corp., 127 N.J. 404, 417 (1992)).  "An expert's conclusion 'is

excluded if it is based merely on unfounded speculation and unquantified possibilities.'" Ibid. (quoting Grzanka v. Pfeifer, 301 N.J. Super. 563, 580 (App. Div. 1997)) (internal quotation marks omitted).

"[A] trial court must ensure that an expert is not permitted to express speculative opinions or personal views . . . ." Ibid. "[A]n expert offers an inadmissible net opinion if he or she 'cannot offer objective support for his or her opinions, but testifies only to a view about a standard that is personal.'" Davis v. Brickman Landscaping, Ltd., 219 N.J. 395, 410 (2014) (quoting Pomerantz Paper Corp. v. New Cmty. Corp., 207 N.J. 344, 373 (2011)) (internal quotation marks omitted); see also Riley v. Keenan, 406 N.J. Super. 281, 296 (App. Div. 2009) (explaining experts "must be able to point to generally accepted, objective standards of practice and not merely standards personal to them").

"Evidential support for an expert opinion may include what the expert has learned from personal experience and training; however such experience, in turn, must be informed and given content and context by generally accepted standards, practices, or customs of the . . . industry." Satec, Inc. v. Hanover Ins. Grp., Inc., 450 N.J. Super. 319, 333 (App. Div. 2017). There must be some "authority supporting [the] opinion," which can take the form of "any document,

any written or unwritten custom, or established practice that the [industry] recognized as a duty it owes." Ibid. "[T]he source of the standard of care enunciated, . . . by which to measure plaintiff's claimed deficiencies or to determine whether there was a breach of duty owed [by] defendant" must be identified. Id. at 334.

Applying these principles to our review of Tedesco's Rule 104 hearing testimony, we are convinced he rendered an inadmissible net opinion. The court was correct that Tedesco's conclusions that the City had constructive notice of the protruding nail due to rust on the nail was a conclusory personal opinion. While he referenced the photo of the nail in his assessment, he did not offer any factual or scientific support for his conclusion that it had been protruding for at least three months. He simply gave an estimated range based solely on photographic comparisons to other nails in that area of the boardwalk. While these comparisons may be useful to determine relative corrosiveness, it was speculative for Tedesco to opine how long the nail was rusting and protruding from the boardwalk. Although, as plaintiffs argue, he does not necessarily need to be a metallurgist to qualify as an expert witness, he must still support his opinion with facts, scientific data, or an accepted standard. He provided none.

A-1369-20

Because he failed to state the "why and wherefore" of his opinion, the court properly applied its discretion to bar his testimony as inadmissible net opinion.

Turning to the trial court's summary judgment dismissal of plaintiffs' complaint, we review the decision de novo. Giannakopoulos v. Mid State Mall, 438 N.J. Super. 595, 599 (App. Div. 2014). We utilize the same standard as the court and consider "whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995).

"Generally, immunity for public entities is the rule and liability is the exception." Fleuhr v. City of Cape May, 159 N.J. 532, 539 (1999). "[P]ublic entities shall only be liable for their negligence within the limitations of" the TCA. N.J.S.A. 59:1-2. The requirements of the TCA are "stringent" and place a "heavy burden" on plaintiffs seeking to establish public entity liability. Bligen v. Jersey City Hous. Auth., 131 N.J. 124, 136 (1993).

Through enactment of N.J.S.A. 59:4-2, our Legislature waived public entity immunity for injuries caused by a dangerous condition of public property in limited circumstances. The statute provides, in relevant part, as follows:

A public entity is liable for injury caused by a condition of its property if the plaintiff establishes that the property was in dangerous condition at the time of the injury, that the injury was proximately caused by the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred, and that either:

a.   a negligent or wrongful act or omission of an employee of the public entity within the scope of his employment created the dangerous condition; or

b.  a public entity had actual or constructive notice of the dangerous condition under section 59:4-3 a sufficient time prior to the injury to have taken measures to protect against the dangerous condition.

Nothing in this section shall be construed to impose liability upon a public entity for a dangerous condition of its public property if the action the entity took to protect against the condition or the failure to take such action was not palpably unreasonable.

[N.J.S.A. 59:4-2.]

N.J.S.A. 59:4-1(a) defines a "dangerous condition" as "a condition of property that creates a substantial risk of injury when such property is used with due care in a manner in which it is reasonably foreseeable that it will be used." To pose a "'substantial risk of injury' a condition of property cannot be minor, trivial, or insignificant.  However, the defect cannot be viewed in a vacuum.  Instead, it must be considered together with the anticipated use of the

property . . . ."  Atalese v. Long Beach Twp., 365 N.J. Super. 1, 5 (App. Div. 2003).

N.J.S.A. 59:4-3 establishes when a public entity will be deemed to have actual or constructive notice of a dangerous condition of its property:

> a.  A public entity shall be deemed to have actual notice of a dangerous condition within the meaning of subsection b. of section 59:4-2 if it had actual knowledge of the existence of the condition and knew or should have known of its dangerous character.
>
> b.  A public entity shall be deemed to have constructive notice of a dangerous condition within the meaning of subsection b. of section 59:4-2 only if the plaintiff establishes that the condition had existed for such a period of time and was of such an obvious nature that the public entity, in the exercise of due care, should have discovered the condition and its dangerous character.

Finally, to establish palpably unreasonable behavior, a plaintiff has a "steep burden" to prove "more than ordinary negligence."  Coyne v. State Dep't of Transp., 182 N.J. 481, 493 (2005).  "Palpably unreasonable" implies behavior by a public entity "'that is patently unacceptable under any circumstance' and that 'it must be manifest and obvious that no prudent person would approve of its course of action or inaction.'"  Holloway v. State, 125 N.J. 386, 403-04 (1991) (quoting Kolitch v. Lindedahl, 100 N.J. 485, 493 (1985)).  An analysis of whether a public entity's behavior is palpably unreasonable involves "not only

13

what was done" but also the entity's "motivating concerns." Schwartz v. Jordan, 337 N.J. Super. 550, 563 (App. Div. 2001). "Simply put, the greater the risk of danger known by the Township and sought to be remedied, the greater the need for urgency." Ibid.

Although whether a public entity acted in a palpably unreasonable manner is often decided by a jury, the court may decide the question in appropriate cases. Maslo v. City of Jersey City, 346 N.J. Super. 346, 350-51 (App. Div. 2002). "[L]ike any question of fact, the determination of palpable unreasonableness is subject to a preliminary assessment by the court as to whether it can reasonably be made by a fact-finder considering the evidence." Charney v. City of Wildwood, 732 F. Supp. 2d 448, 457 (D.N.J. 2010) (citing Black v. Borough of Atlantic Highlands, 263 N.J. Super. 445, 451-52 (App. Div. 1993)).

Considering these guidelines and carefully reviewing the record, we are satisfied the summary judgment order is supported by the record. We agree with the court that no reasonable factfinder could conclude defendant's practice of inspecting and repairing the boardwalk was palpably unreasonable. The court's reliance on Charney, which involved a plaintiff's fall caused by a hole in the City of Wildwood boardwalk, was on point. There, Judge Rodriguez explained:

> Even assuming . . . Wildwood had notice of the hole, it cannot be said that the decision to leave a one and one-

14

half inch deep, one and one-quarter inch wide triangular hole unrepaired was palpably unreasonable. At worse, the decision to leave small boardwalk defects unrepaired was negligent. Indeed, Wildwood . . . arguably could have made more thorough and effective repairs of the boardwalk. Perfection, however, is not required under the [TCA]. Wildwood made daily inspections of the boardwalk and repaired those defects it deemed sufficiently hazardous. . . . Wildwood's failure to remedy a small defect in a walkway surface cannot be said to constitute the kind of "outrageous" or "patently unacceptable" behavior that rises to the level of palpable unreasonableness. Imperfections in boardwalk surfaces are commonplace, and the failure of a public entity to remedy every small defect in a boardwalk simply cannot be deemed palpably unreasonable.

[Charney, 732 F. Supp. 2d at 458.]

Considering the boardwalk's length and the number of nails or screws used to secure it, plaintiffs have not shown, based on the record, that defendants are liable for the TCA claims asserted in the complaint.

To the extent we have not specifically addressed any of plaintiffs' arguments, we conclude they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

15

A-1369-20